MILDRED KORMAN, PETITIONER-RESPONDENT, v. HY-GRADE FOOD PRODUCTS CORPORATION, RESPONDENT-PROSECUTOR.

Submitted May 4, 1943—Decided August 24, 1943.

Before BROGAN, CHIEF JUSTICE, and Justices BODINE and COLIE.

For the petitioner-respondent, *David Roskein* (*Harry Cohn*, of counsel).

For the respondent-prosecutor, *Elias G. Willman* and *Norman N. Popper*.

The opinion of the court was delivered by

BROGAN, CHIEF JUSTICE. The Workmen's Compensation Bureau in a death case awarded compensation to the widow of the deceased employee. The happening, after which death resulted, occurred in the State of New York and there being no review by appeal to the Court of Common Pleas (see *R. S.* 34:15-66; *Burdick* v. *Liberty Motors Freight Lines,* 128 *N. J. L.* 229), *certiorari* was allowed.

The decedent had been in the employ of the respondent as a truck driver for about two and a half years. On Friday, October 24th, 1941, the decedent was engaged in his usual work of collecting bones and fat from a meat market in New

York. While he and his helper were thus engaged, loading the truck at the rear end, the wind, it is said, blew the door of the truck to and the decedent was struck on the head. The evidence indicates that he wasn't able to do his usual work for the rest of the day except to assist his helper when necessary. He complained of headache. The next day he undertook his duties, the helper, however, doing most of the work. At the end of the day the helper left the employ of the respondent. On Monday the decedent performed his duties single-handed, although the testimony shows that at several places on his list he required help in loading the truck. That evening he reported to the foreman that he didn't feel well and would like to go home early which he did. The following morning, at home, a sudden seizure caused him to fall. The family physician was called, who ordered him to the hospital at once. He died on November 6th.

There are three questions in the case—first, whether the decedent suffered an accidental injury arising out of and in the course of his employment; second, whether the accident was the cause of the injury from which decedent died; third, in the absence of the statutory notice prescribed by *R. S.* 34:15-18 (which concededly was not given) whether the employer had actual knowledge of the occurrence of the injury sufficient to make it answerable for compensation. The Bureau determined all three questions in favor of the petitioner. For present purposes we may assume that the Bureau was correct in its determination of the first two questions; but with regard to the third we consider that the Bureau fell into error which requires a reversal of its judgment. It is necessary to refer to the testimony for a proper understanding of the question under review.

One of the medical witnesses, Dr. Weinberg, had been an interne at the Beth Israel Hospital in Newark when the employee was admitted to that institution. He testified that he saw the patient, Korman, daily from the time of his admission to the hospital, October 28th, 1941, until he died; that the patient was comatose during that interval; that Dr. Weinstein, the family physician who recommended hospitalization, had advised that the patient was suffering from dia-

betic coma; that the witness himself diagnosed the case as sub-arachnoid hemorrhage, early uremia and essential hypertension; that what little collateral history of the patient he obtained from Mrs. Korman made no mention of any traumatic injury.

Russell Stanley, who was the decedent's helper on the truck on the day of the accident, testified that about six weeks after the accident, when interviewed by a representative of the employer, he told him of the happening of the accident on October 24th, 1941. He further said that by arrangement with Korman he always boarded the truck at a certain place each day en route to New York and that he left the truck on the homeward journey at the same place in Jersey City; that it was not his custom to return to the plant and that subsequent to the accident he never had occasion to go back to the plant. On further cross-examination he concluded that he discussed the accident with the representative of the company not six weeks after the accident but rather six weeks prior to the hearing, that is, in May, 1942, and again in June, 1942. Therefore his information was imparted to the employer seven months after the event.

Mrs. Korman, decedent's widow, testifying on this phase of the case, said that she spoke to a Mr. Schachter, a superintendent for the employer, two or three weeks after the death of her husband at which time she inquired of him the name of the man who was with her husband "at the time he [the decedent] was hurt." Objection to this testimony was sustained. The testimony of these witnesses forms no real basis even for the inference that knowledge of the injury was imparted to the employer within the ninety day period fixed by the statute, R. S. 34:15–17. The testimony of Stanley requires a finding that the first time he discussed the accident and injury with anyone representing the employer was more than ninety days after the happening. Nor does Mrs. Korman's testimony bring home to the employer knowledge of the occurrence of injury suffered by her husband. The words relied upon to impute knowledge to the employer were said to have been uttered to Schachter, of whom the witness asked the address of Stanley, the helper, who was with the decedent

*when he was hurt*. This part of her evidence was hearsay and may not be utilized to determine the substantial rights of the parties. See *Friese* v. *Nagle Packing Co.*, 110 *N. J. L.* 588; *Helminsky* v. *Ford Motor Co.*, 111 *Id*. 369. And in any event the words "when he was hurt" could not be construed to mean notification or imparting knowledge to the employer, that the decedent had received an injury by accident that arose out of and in the course of his employment. It is true that in the testimony of Daly, the foreman, it appeared that on Monday evening, the third day after the accident, the decedent asked permission to go home at once because he didn't feel well; and it is also true that the employer learned that the decedent was in the hospital, having been informed that he suffered from general hemorrhage and that Schachter asked a doctor friend to inquire at the hospital about Korman's condition and learned that he suffered from hemorrhage—but this falls short of knowledge of the occurrence of injury arising out of and in the course of the employment.

From the evidence before us we are persuaded that the employer had no knowledge of any accident to the employee and no actual knowledge of the occurrence of injury. The extent of the employer's knowledge was that the decedent reported that he was sick on the evening of October 27th; that he didn't return to work on the 28th, and the later information received that he was suffering from cerebral hemorrhage. The inquiry therefore comes down to this: Did the employer at any time within the limitations of *R. S.* 34:15–17 receive notice or, in lieu of notice, possess knowledge of the occurrence of the injury? There is no competent proof that it did, save only knowledge of the fact that Korman had suffered some injury or illness without the employer knowing when, where or how it had occurred.

The petitioner relies upon the case of *General Cable Co.* v. *Levins*, 122 *N. J. L.* 383; *affirmed*, 124 *Id*. 223. But in that case the employer had knowledge of the occurrence of injury arising out of and in the course of the employment. Here no information was imparted to the employer out of which it could be chargeable with such knowledge. We conclude

that the proof falls short of bringing home to the respondent that "actual knowledge of the occurrence of the injury" which is necessary to satisfy the requirements of our statute, *supra*. Compare *Hercules Powder* v. *Nieratko,* 113 *Id.* 195; *affirmed,* 114 *Id.* 254; *Bobowinik* v. *Erie Railroad,* 118 *Id.* 118; *General Cable Co.* v. *Levin, supra*.

The judgment under review is reversed, with costs.