DENNIS KARDOS, PROSECUTOR, v. AMERICAN SMELTING AND REFINING CO., RESPONDENT.

Argued October 3, 1944—Decided October 30, 1944.

Before Justices CASE, BODINE and PORTER.

For the prosecutor, *John A. Laird* and *David Roskein*.

For the respondent, *Seaman & Seaman (Joseph J. Seaman)*.

The opinion of the court was delivered by

CASE, J. This is a workman's compensation case. The employer produced no proofs. It moved for an award in its favor at the close of petitioner's case. The Bureau determined that the petitioner had sustained the material allegations of his petition by the preponderance of the evidence, that as a result of exposure to drafts and water incident to the employment on or about February 8th, 1941, the petitioner contracted pneumonia with ensuing temporary and partial permanent disability and that the exposure constituted an accident arising out of and in the course of the employment. The employer appealed to the Court of Common Pleas of the County of Middlesex. That court reversed. In doing so it conceded that the petitioner contracted pneumonia "by reason of his exposure to the drafts, heat and water, in the course of his employment" but nevertheless determined that there was nothing extraordinary or unusual about the conditions, that the petitioner had not sustained the burden of proof necessary to bring him within the application of the rule stated in *Richter* v. *Du Pont,* 118 *N. J. L.* 404, and that he had not suffered an injury arising out of and in the course of the employment. The rule referred to was stated thus in the Richter case:

"The rule is that, when the employment brings a greater exposure than that to which persons generally in that locality are exposed, injury or death resulting therefrom, such injury or death does arise out of the employment."

There was proof introduced by the petitioner sufficient to sustain a factual finding as follows: During the first week in February, 1941, petitioner suffered from a common cold because of which he went to his foreman, told the latter of the ailment, got a "pass" to the plant physician, went to the physician, and received from the physician a prescription for the treatment of the cold. Petitioner continued at his work until February 8th, 1941. The work was that of furnace man's helper. It was performed in a drafty building, and it subjected the petitioner to exposure to intense heat from a smelting furnace carrying a high temperature at times reaching 1,200 degrees, alternating with cold drafts upon his

sweating body, and occasionally to the wetting of clothes and feet from the spraying of water on the metal molds. On Saturday, February 8th, petitioner's cold, aggravated by those conditions, developed into pneumonia. He reported to his foreman that he was sick and at the quitting hour went home and to bed. On Monday the plant physician, summoned by a friend of petitioner's family, called on and saw the petitioner, but the latter was already under treatment by his own doctor, and so continued. On May 3d, 1941, on a diagnosis of bilateral tuberculous pleurisy with effusion, acute tonsillitis and catarrhal conjunctivitis, petitioner was admitted to the Roosevelt Hospital, the county tuberculosis institution, at Metuchen, where he remained as a county indigent patient until May 14th, 1942. The fact is however that petitioner did not have, and did not contract, tuberculosis. On October 24th, 1942, petitioner again went to work, not with his former employer, but as a guard at the Carteret Ordinance Motor Reception Park.

On that showing we find that the exposure to alternating extreme heat and chilling cold, and to the intermittent wetting of clothes and feet, was a contributing cause of the pneumonia from which the petitioner suffered, and that those plant conditions constituted a greater exposure than that to which persons generally in the locality were subjected. The case is thus brought within the application of *Richter* v. *Du Pont, supra; affirmed,* 119 *N. J. L.* 427, and *Ciocca* v. *National Sugar Refining Co.,* 124 *Id.* 329. We do not understand that the "locality" mentioned in the rule is limited to the interior of the plant or to any particular part of the plant where petitioner was employed. Such demarcation would scarcely serve to distinguish the hazards of the employment from the hazards general to the locality. It is not contended, and could not well be, that persons generally in that locality were exposed to the conditions which we have described. The employer chose to leave the proofs as the petitioner presented them; and inasmuch as the plant conditions are thereby shown to have been a factor in causing the pneumonic condition within the purview of the Ciocca case, and pneumonia induced by the peculiar conditions of the place of work becomes an

injury within the holding in the Richter case, we are brought to the conclusion that the petitioner did suffer an injury arising from and in the course of his employment and that the disability sued for is within the field of compensation under the statute.

The employer contends that it had neither notice nor knowledge of either an injury or an accident to the petitioner (*R. S.* 34:15–17). Our view, expressed *supra,* is that the statutory injury occurred on February 8th. The earlier events were before the injury and therefore would not, without more, have been enough, but those events were supplemented by the incidents of February 8th and 10th. It may, we think, in the absence of any proof to the contrary, be inferred that the plant doctor, when he made the professional visit on February 10th, observed that which was apparent to a physician, namely, that the petitioner had pneumonia, then well advanced. The employer, of course, knew the plant conditions as well as did the petitioner. Knowledge had by a foreman of injury to a workman is knowledge of the corporate employer. *Granowitz* v. *Hay Foundry and Iron Works,* 9 *N. J. Mis. R.* 1165 (not officially reported) ; *affirmed,* 109 *N. J. L.* 394. So is the knowledge of the plant physician. *General Cable Corp.* v. *Levins,* 124 *Id.* 223. Applying these legal rules to the factual status of the case we conclude that the employer had knowledge of the injury. It should be noted, however, that no notice of any sort was given to, and no knowledge regarding the petitioner was acquired by, the employer after that visit of the plant doctor on February 10th.

The employer further contends that the Bureau erred in directing the employer to pay the bill of the Roosevelt Hospital in the amount of $1,211.44. The pertinent statute, *R. S.* 34:15–15, provides that "the employer shall not be liable for any amount expended by the employee or by any third person on his behalf for any such physicians' treatment and hospital services, unless such employee or any person on his behalf shall have requested the employer to furnish the same and the employer shall have refused or neglected so to do, or unless the nature of the injury required such services, and the employer or his superintendent or foreman, having knowledge of

such injury shall have neglected to provide the same, or unless the injury occurred under such conditions as make impossible the notification of the employer, or unless the circumstances are so peculiar as shall justify, in the opinion of the workmen's compensation bureau, the expenditure assumed by the employee for such physicians' treatment and hospital services, apparatus and appliances." When the plant physician, in response to a summons from an unauthorized source, called upon petitioner, his services were thus made available but obviously were not wanted; and no allowance was asked or granted for the services of an attending physician. No notice was given to the employer that hospitalization was necessary or proposed, no request was made upon the employer to furnish the same, and no knowledge, so far as we discover, was had by or chargeable to the employer that at a time nearly three months after the petitioner had elected to be treated by an outside doctor hospital treatment was advisable. The condition of the petitioner on February 8th or on February 10th, 1941, was not such as to carry notice or knowledge that hospitalization was, or would become, necessary. Further, the employer was given no notice and is not shown to have had knowledge that the petitioner suffered from any of the ailments for the treatment of which he was given hospital treatment. It is not shown to have been impossible or even impracticable for the petitioner to have notified the employer; indeed, no justifiable reason is advanced for not giving notice to, or for not making a request upon, the employer. Petitioner's physical condition at the time of admission to the hospital is not shown to have been acute. The Bureau did not find a peculiar state of circumstances, and no state of circumstances so peculiar as not to have permitted a request of or notice to the employer is shown to us. The petitioner was out of bed for a month or more before he became an inpatient at the hospital. During that time he was up and about the house. On March 25th, and again on April 22d, he was able to go from his home in Perth Amboy to the hospital in Metuchen for the purpose of having X-ray photographs taken. He was living at home with his parents. We are given no explanation why petitioner did not communicate,

either in person, or by mail, messenger or telephone, some word of his condition and needs to his employer at the usual place of employment in the same city. The inclusion of the hospital bill in the award was, we think, contrary to the provisions of the statute. *Massie* v. *Court of Common Pleas,* 8 *N. J. Mis. R.* 600; *affirmed,* 108 *N. J. L.* 199.

The judgment in the Pleas will be set aside and the record remitted to the end that a judgment be entered for the award granted by the Bureau, less the hospital bill. Neither side prevails in full and costs are not allowed.