GEORGE, PANCHAK, PLAINTIFF-APPELLANT, v. SIMMONS COMPANY, DEFENDANT-RESPONDENT.

Argued January 25, 1954—Decided March 8, 1954.

14

*Mr. Mortimer Wald* argued the cause for the appellant.

*Mr. Thomas J. Brett* argued the cause for the respondent (*Messrs. O'Brien, Brett & O'Brien*, attorneys).

The opinion of the court was delivered by

Jacobs, J.   The Division of Workmen's Compensation granted an award to the plaintiff-employee for injury resulting from an accident which arose out of and in the course of his employment.   On the employer's first appeal the award was affirmed by the County Court.   On its further appeal the employer did not question that the plaintiff had sustained an injury which resulted from his employment but resisted payment on the ground that it had neither knowledge nor notice thereof within the time limits prescribed by *R. S.* 34:15–17.   The Appellate Division reluctantly sustained this ground and set aside the award.   We granted certification on the employee's application.   See 13 *N. J.* 362 (1953).

The plaintiff was employed by the defendant as a mattress maker and was required to lift mattresses from the floor to a bench where they were filled and sewed.   During the morning of March 19, 1951 he was lifting a mattress and felt a "sharp jab" in his back.   The pain was fleeting and he thought nothing more of it.   Later in the morning he felt feverish and faint and dropped himself over the bench.   He called to his wife who worked nearby and she called the foreman.   He told the foreman that something was wrong and he wanted to go home.   In the foreman's language, "You could see that the man was sick"; "he said he had some sort of a pain," indicating towards his back.   The foreman called the assistant supervisor who told the plaintiff to report to the first aid department.   He reported but received abrupt treatment from the plant nurse who inquired whether he felt sick because he "had an argument."   He told the nurse that

he had no argument but that he did not feel well and that something was wrong. She gave him some pills for a cold and he went home. He felt better the next day, went to work, and continued to work thereafter.

About a month after the March 19th incident the plaintiff experienced a pain over his right thigh. He continued to work but the pain worsened and finally in October, 1951 he sought medical treatment. During October he visited several doctors without obtaining any results. On November 1, 1951 he was examined by Dr. Ehrlich, a well known neurosurgeon, who diagnosed his condition as a herniated disk in the lumbar region on the right side. On November 27, 1951 the doctor performed an exploratory laminotomy and although no evidence of a disk was disclosed the pain was relieved by the operation which had a decompressive effect. Dr. Ehrlich was of the opinion that the plaintiff had had a herniated disk and that it was causally related to the March 19 incident which the doctor learned about when he obtained a complete history from the plaintiff on November 1, 1951. On the same day the plaintiff delivered a letter from Dr. Ehrlich to the defendant, reported on his back injury, and made a statement to the adjuster for the defendant's compensation insurance carrier.

R. S. 34:15–17 provides that unless the employer shall have (1) "actual knowledge of the occurrence of the injury," or (2) notice thereof within the time limits therein prescribed, not exceeding 90 days, no compensation shall be allowed. The statutory requirement is designed to afford to the employer the benefits of timely investigation and is mandatory in nature. *Hercules Powder Co. v. Nieratko*, 113 *N. J. L.* 195 (*Sup. Ct.* 1934), affirmed 114 *N. J. L.* 254 (*E. & A.* 1935). Its construction and application must, however, be in the full light of the goals of the humane social legislation of which it is part. See *Voris v. Eikel*, 346 *U. S.* 328, 74 *S. Ct.* 88, 92, 98 *L. Ed.* —— (1953), where the Supreme Court, in a recent case dealing with a comparable requirement of knowledge or notice in a federal compensation act, pointed out that the act "must be liberally construed

in conformance with its purpose, and in a way which avoids harsh and incongruous results." *Cf. Spindler v. Universal Chain Corp.*, 11 *N. J.* 34, 38 (1952) ; *Granahan v. Celanese Corp. of America*, 3 *N. J.* 187, 193 (1949). Thus, first-hand knowledge by the employer is held unnecessary; it is enough that his supervisory employees have been duly made aware of circumstances which, in common parlance, would indicate knowledge of the occurrence of the injury. See *Gamon Meter Co. v. Sims*, 114 *N. J. L.* 590, 594 (*Sup. Ct.* 1935) ; *Allen v. City of Millville*, 87 *N. J. L.* 356 (*Sup. Ct.* 1915), affirmed 88 *N. J. L.* 693 (*E. & A.* 1916) ; *Hercules Powder Co. v. Nieratko, supra.* And the knowledge suffices though it relates only to the injury rather than additionally to the accident which caused it. *Hercules Powder Co. v. Nieratko, supra; General Cable Corp. v. Levins*, 122 *N. J. L.* 383 (*Sup. Ct.* 1939), affirmed 124 *N. J. L.* 223 (*E. & A.* 1940) ; *Kardos v. American Smelting & Refining Company*, 132 *N. J. L.* 579 (*Sup. Ct.* 1944), affirmed 133 *N. J. L.* 39 (*E. & A.* 1945) ; *Layng v. Storch Trucking Co.*, 17 *N. J. Super.* 555 (*Cty. Ct.* 1952).

In the *Nieratko* case the employee sustained a hernia for which he received compensation for a period of 16 weeks. Later, a petition was filed alleging that a falling barrel had struck him causing not only the hernia but also a brain injury which rendered him insane and ultimately caused his death. The employer contended that its only knowledge was of an accident resulting in a claim for hernia and that it could not be held accountable on the brain injury claim. This contention was rejected in an opinion by Justice Heher which noted the employer knew of the occurrence of the injury and that no particularization or specification of its nature and extent was required. In the *Levins* case the employee struck his head on a beam. Shortly thereafter he felt as though there was something in his eye and went to the first aid room where the plant doctor removed "a foreign body" from his eye and told him to go home. He was not asked by the doctor about any head blow or other accidental occurrence and he volunteered nothing about it. He con-

tinued to work and though he told the doctor that his eye was "about the same" no further examination was then made. Finally the employee consulted an eye specialist who advised an operation which was performed without satisfactory results. Justice Perskie, in holding that the plant doctor's knowledge was sufficient to bind the employer, pointed out that it was unnecessary that the knowledge include the causal relation between the head blow and the eye impairment since "ofttimes the ultimate results of a particular injury are not ascertainable until a considerable time has elapsed."

In the *Kardos* case the employee had a common cold and received a prescription for its treatment from the plant doctor. He continued his work in a drafty building with alternating heat and cold. Several days later his condition developed into pneumonia and at quitting time he reported sick, went home and to bed. He was treated by his own physician but on one occasion the plant doctor called upon him. Justice Case rejected the employer's contention that it had neither knowledge nor notice of injury within *R. S.* 34:15–17, holding that the plant doctor knew of the working conditions and the employee's illness and that was sufficient. In the recent *Layng* case the employee received a head blow; the court found that the employer did not have knowledge or notice of this happening within the 90-day period set forth in *R. S.* 34:15–17. However, supervisory employees did have timely knowledge of the employee's sudden blindness which occurred during his employment on the following day and which was later established as being causally related to the blow. Judge Drewen, after properly distinguishing *Bobowinik v. Erie Railroad Co.*, 118 *N. J. L.* 118 (*Sup. Ct.* 1937) and *Korman v. Hygrade Food Products Corp.*, 130 *N. J. L.* 468 (*Sup. Ct.* 1943), affirmed 131 *N. J. L.* 188 (*E. & A.* 1944), on their particular facts, held that the knowledge of the employee's sudden blindness during his employment was sufficient without more. *Cf. Nagy v. National Can Co.*, 277 *App. Div.* 1083, 100 *N. Y. S.* 2d 807, 808 (*App. Div.* 1950), where the court in support of a finding of the sufficiency of the employer's knowledge noted that while the "foreman,

nurse and company physician may have believed that claimant was ill from other than accidental causes, still the sudden and acute illness of a worker operating machinery is the kind of a condition which a careful prudent management might associate with industrial accident."

We are satisfied that, within the liberal scope of the foregoing authorities, the employer in the instant matter may be deemed to have had timely knowledge of the occurrence of the injury within the contemplation of *R. S.* 34:15–17. The foreman knew that in the midst of his arduous task the plaintiff became sick and had some sort of back pain. Similarly, the assistant supervisor and the nurse knew that something untoward had occurred during his employment. While it is true that no mention was made of the earlier momentary pain, that was understandable enough since the employee reasonably did not relate it to his subsequent ill feeling. Although the plaintiff felt sick and was not very talkative he truthfully told his supervisors how he felt and withheld nothing which appeared material to him. Proper inquiries were not then made by either the foreman or the assistant supervisor, and the nurse not only failed to make suitable interrogation but apparently failed to afford full opportunity for the statement of his condition. Employers may generally be charged with pertinent knowledge far superior to that of their employees; they are undoubtedly now aware that many industrial accidents may occur without external trauma and they must guide themselves accordingly. Where, as here, an employee engaged in lifting mattresses suddenly ceases work and mentions illness and back pain to his supervisory employees, a work-connected incident may be indicated and the employer may justly be expected to make suitable inquiry to ascertain whether there was an injury within the broad coverage of the Compensation Act. Sympathetic furtherance of the high objectives of the act and elemental fairness to the employee dictate that, under the particular circumstances presented, the statutory provision relating to knowledge be considered as having been satisfied. *Cf. Merritt v. American Stevedores, Inc.*, 15 *N. J. Misc.* 710, 712 (*Com. Pl.* 1937).

In support of his appeal, the plaintiff has advanced an alternative contention which is socially important and warrants our present determination. He asserts that the first time he knew, or had reason to know, that he had a compensable injury, was on November 1, 1951 when Dr. Ehrlich diagnosed his condition as a herniated disk; he contends that he notified his employer immediately thereafter and thereby complied with the notice requirement of *R. S.* 34:15-17. The Appellate Division rejected this contention upon the view that the opinion of the Court of Errors and Appeals in the *Nieratko* case (114 *N. J. L.* 254) was controlling but in the course of its opinion said:

> "There is no question but that the claim of the petitioner is *bona fide* and that his lack of knowledge of the cause of his disability arose from the unusual traumatic result of the injury. It is readily understandable that neither he nor the first doctors whom he consulted should have related the pain in his thigh to a herniated disk. As soon as medical science revealed that fact the employer was made aware of the situation. It would seem that the 90-day limitation provided for in the statute is designed first to give the employer an opportunity within a reasonable time after an alleged accident to investigate the same, and secondly to prevent the making of claims for simulated injuries or injuries that might have occurred other than in the course of the employment. In the instant case neither of those reasons is particularly applicable and as a matter of abstract justice it would seem that the petitioner should be compensated."

When the *Nieratko* case was before the former Supreme Court (113 *N. J. L.* 195) the finding was made that the employer had actual knowledge of the occurrence of the injury; in *dicta,* the court expressed its views that the notice requirement was merely directory and that the notice need not be in writing. On appeal the Court of Errors and Appeals affirmed without adopting the *dicta.* See 114 *N. J. L.* 254; *General Cable Corp. v. Levins, supra* (122 *N. J. L.,* at *page* 386). It is true that the former Supreme Court had also indicated its strong leaning towards the position, now urged by the plaintiff, that the notice period should not begin to run until a compensable injury is manifested. But it expressly left that issue undetermined and the Court of

Errors and Appeals had no occasion to and did not in any-wise deal with it. We consider that it is open to us for original disposition without any controlling precedent within our State.

The subject has been extensively dealt with in decisions in other states which have been collected in 2 *Larson, Work-men's Compensation Law*, 251 *et seq.* (1952); *Griffin v. Rustless Iron & Steel Co.*, 187 *Md.* 524, 51 *A.* 2*d* 280 (*Ct. App.* 1947); *Baldwin v. Scullion*, 50 *Wyo.* 508, 62 *P.* 2*d* 531, 108 *A. L. R.* 304 (*Sup. Ct.* 1936); 78 *A. L. R.* 1232 (1932); 145 *A. L. R.* 1263 (1943); 52 *Col. L. Rev.* 420 (1952). Dean Larson indicates that under the type of statute which dates the notice or claim period from the occurrence of the injury (rather than the accident) there is now almost complete judicial agreement that the time begins to run when the employee knows or ought to know that he has a compensable injury. In *Clausen v. Minnesota Steel Co.*, 186 *Minn.* 80, 242 *N. W.* 397, 398 (1932), the Minne-sota Supreme Court dealt with statutory provisions similar to those embodied in *R. S.* 34:15–17. Clausen, an employee of the Minnesota Steel Co., had received a blow on the knuckle of the forefinger of his right hand. He continued working and when he went home he bathed his hand in hot water. Although a certain soreness remained he considered the matter trivial, continued his work and made no report of the incident. Several months later his finger pained him and he consulted a doctor. X-rays were then taken, dis-closing osteomyelitis of the metacarpal bone of the finger. Immediately thereafter he notified his employer but com-pensation was refused on the ground that notice had not been given within the 90-day statutory period. The court, in rejecting this ground, pointed out that it could hardly have been the legislative intent that the employee give notice of "every slight accidental scratch, pin prick, or blow suffered in his work"; in the course of its opinion it said:

"It is common knowledge that accidents may injure some parts of the physical structure of the body not open to view nor suspected of having received an injury, nor causing disability until long after the

accident. The injury is there, but latent and hidden. There are accidents so trivial in apparent results at the time that neither the one who might witness the same nor the victim thereof would anticipate disability therefrom; yet the subsequent development thereof may cause, not only loss of members, but life itself. Examples of such appear in the decisions of this court. *Walker v. Minnesota Steel Co.*, 167 *Minn.* 475, 209 *N. W.* 635; *Hertz v. Watab Paper Co.*, 180 *Minn.* 177, 230 *N. W.* 481; *Keane v. Arrowhead Steel Products Co.*, 181 *Minn.* 359, 232 *N. W.* 621. The Workmen's Compensation Act does not contemplate the payment of damages for accidental injuries, no matter how painful. It is only the disability or loss of earning power which results from the injuries that calls for compensation. So when the act speaks of the occurrence of injury it refers to compensable injuries, and these occur when disability appears."

*Cf. Rinne v. W. C. Griffis Co.*, 234 *Minn.* 146, 47 *N. W.* 2d 872 (*Sup. Ct.* 1951).

In *Hines v. Norwalk Lock Co.*, 100 *Conn.* 533, 124 *A.* 17, 19 (*Sup. Ct. Err.* 1924) an employee strained himself in lifting a box but continued with his work. He became nervous and run-down and later strained himself again while removing the contents of a room to another part of his employer's factory. He then consulted a physician and upon his advice was operated upon for double hernia. The Supreme Court of Errors of Connecticut held that an award was not barred by the employee's failure to notify the employer of his original strain within the statutory period, saying:

"Since there can be no compensation unless there be incapacity, there would seem to be no reason for requiring a notice to an employer until such incapacity existed. To impose upon the employee the duty of giving notice forthwith after every accident to himself and before he had become incapacitated would place an unreasonable burden on the employee. Probably most accidents to employees result in such slight injury as to be incompensable. Requiring notice of these would also place upon the employer an unnecessary burden of investigation and care. Placing such a duty upon the employee would turn the attention of the employee to the subject of compensation for every trifling injury, and this might result in a tendency to malingering. Since subsequent incapacity may result from an exceedingly slight wrench, bruise, or scratch, the employee under the defendant's claim, in all cases, immediately upon the occurrence of the accident causing the slight injury, must give his employer notice, or else risk having his award reduced if incapacity subsequently results. And the employer must investigate each of these cases and follow up the

employee until all possibility of resulting incapacity shall have passed. We think it unreasonable to conclude that the General Assembly intended a construction such as this to be placed upon the word injury, and especially so in view of their use of injury in *section* 5360, *General Statutes*, as amended by *section* 8, *c.* 306, *Public Acts* 1921, which we hold means resulting incapacity, or, as we phrase it in *Esposito v. Marlin-Rockwell Corporation, supra* [96 *Conn.* 414], compensable injury."

In *Re Brown*, 228 *Mass.* 31, 116 *N. E.* 897 (1917), the Supreme Judicial Court of Massachusetts held that the employee's injury occurred not when he strained himself, but when the resulting rupture manifested itself at a later date. In *Selders v. Cornhusker Oil Co.*, 111 *Neb.* 300, 196 *N. W.* 316 (*Sup. Ct.* 1923), the employee was performing his duties in a basement during a rainstorm when the door was suddenly forced open and he was overtaken by onrushing water. He continued his work but his health failed gradually and it was not until later that an X-ray disclosed that a lumbar vertebra had been fractured. The court held that the employee's claim, filed shortly after he knew or had reason to know that he had a compensable injury, was timely. See also *Baldwin v. Scullion, supra; Hustus' Case*, 123 *Me.* 428, 123 *A.* 514 (*Sup. Jud. Ct.* 1924) ; *Acme Body Works v. Koepsel*, 204 *Wis.* 493, 234 *N. W.* 756, 236 *N. W.* 378 (*Sup. Ct.* 1931) ; *Burcham v. Carbide & Carbon Chemicals Corp.*, 188 *Tenn.* 592, 221 *S. W. 2d* 888 (*Sup. Ct.* 1949) ; 2 *Merrill on Notice* 321 (1952).

The opinions in the cited cases avoid the bizarre result of disallowing a compensation claim because the workman failed to give notice before he even knew or had reason to know that he had a compensable injury; their inherent justice and good sense are evident. Dean Larson has described the contrary result, reached generally under statutes which refer to the occurrence of the accident (rather than the injury), as a "fragment of irrational cruelty." Unlike our statutory provision imposing a two-year limitation for the filing of compensable claims (*R. S.* 34:15–51), the notice provision with which we are now concerned (*R. S.* 34:15–17) refers to the occurrence of the injury rather than the accident.

We are satisfied that, consistent with the over-all legislative purpose and the persuasive decisions elsewhere, it is fairly to be construed as requiring notice within the prescribed time after the compensable injury is manifested. As was suggested in *Bobertz v. Hillside Township*, 125 *N. J. L.* 321, 323 (*Sup. Ct.* 1940), affirmed 126 *N. J. L.* 416 (*E. & A.* 1941), workmen rightly "do not regard every slip in the day's work as a matter to be publicly recorded." The trivial daily bruises which do not result in incapacity or disability are not compensable (*Hercules Powder Co. v. Nieratko, supra*, 113 *N. J. L.*, at *page* 200) and any requirement that they forthwith be reported and investigated would place an undue burden on employees and employers alike. We find nothing in *R. S.* 34:15–17 which imposes such burden. It requires notice after the occurrence of the injury and provides that in the event of default, no compensation shall be due or allowed. It would seem clear from its terminology that the Legislature was referring to disabling or incapacitating injury for which compensation might be sought. *Cf. Textileather Corp. v. Great American, etc., Co.*, 108 *N. J. L.* 121, 124 (*E. & A.* 1931). Despite the tremendous advancement of medical knowledge in relation to industrial accidents, no one can yet accurately foretell the consequences of seemingly trivial hurts, as the instant matter well illustrates. The sharp jab on March 19, 1951 was so fleeting that the employee, acting reasonably, thought nothing more of it. He could hardly have been expected to have then reported it to the foreman nor could he have been expected to relate it to his subsequent general ill feeling and pain in his thigh. It was not until he was examined by Dr. Ehrlich on November 1 that he knew or had reason to know that he had a compensable injury and then he immediately served notice on his employer. This notice may justly be deemed sufficient within the contemplation of the legislative requirement in *R. S.* 34:15–17. *Cf. Massie v. Court of Common Pleas of Monmouth*, 8 *N. J. Misc.* 600, 603 (*Sup. Ct.* 1930), affirmed 108 *N. J. L.* 199 (*E. & A.* 1931). We are not impressed by the suggestion that this view may

encourage questionable claims. The employee must still satisfactorily discharge his affirmative burden of establishing that his injury was work-connected and that he gave notice within the prescribed time after he knew or had reason to know that he had a compensable injury. Measured against the shocking injustice to the workman which would result from a stricter approach, the additional responsibility placed upon the employer seems rather inconsequential from society's viewpoint.

Although the defendant has placed some reliance on recent legislation dealing with compensable occupational disease, we fail to see how it lends any support. *R. S.* 34:15-33 had provided for notice within five months after the cessation of exposure. Recognizing that this requirement would operate unjustly where the employee had no reason to know that he had a compensable occupational disease until after the expiration of the five-month period, the Legislature in *chapter* 468 of the *Laws of* 1948 amended *R. S.* 34:15-33 to provide that the notice is sufficient if given within the five-month period "or within ninety days after the employee knew or ought to have known the nature of his disability and its relation to his employment." It may be doubted that this legislation can be used to shed any light on the meaning of *R. S.* 34:15-17 which antedated it by 37 years. See *Fogarty v. United States,* 340 *U. S.* 8, 14, 71 *S. Ct.* 5, 95 *L. Ed.* 10, 15 (1950). In any event, the general language embodied in *R. S.* 34:15-17 had been construed throughout the states as requiring notice after the employee knew or had reason to know of a compensable injury. When the Legislature enacted *L.* 1948, *c.* 468 it was fully aware of the problem, accepted the inherently just approach which precludes the barring of a compensation claim for lack of notice before the workman knew or had reason to know that he had a claim, and cautiously used language specifically designed to achieve its purpose; but in so doing it in no manner suggested any legislative purpose that a contrary and retrogressive approach be deemed embodied in the broad and judicially interpreted terminology of *R. S.* 34:15-17.

The judgment entered in the Appellate Division is reversed and the award in the plaintiff's favor is reinstated.

OLIPHANT, J. (dissenting). The majority opinion states that the statutory requirement of notice of injury is satisfied when "his supervisory employees have been duly made aware of circumstances which, in common parlance, would indicate knowledge of the occurrence of the injury." I agree that this is a correct exposition of the rule but the record here is clear that the employer through the petitioner's supervisory employees had no awareness of circumstances which would indicate the occurrence of an injury or of an incident which might produce an injury until over seven months after its alleged occurrence.

Petitioner says that on March 19, 1951, while performing his usual work, he felt a "sharp jab in my back" which he described as a "pin prick" which did not last even a second and he paid no further attention to it. Later on that day he became dizzy and faint and said to the foreman: "There is something wrong with me; * * * I don't feel well." The foreman testified that he said he had some sort of a pain and made sort of a motion toward his back. He was instructed to report to the first aid station where he told the nurse "Something is wrong with me. I don't feel well. I want to go home." To the nurse he made no mention of any back pain and concedes that no one but himself had any knowledge that anything had happened to him. He returned to work the following day and continued his work without interruption and without complaint until October, 1951, when he sought medical treatment. It was not until November 1, 1951, seven months after the alleged injury, that anyone at his place of employment was advised of any back condition.

Because an employee leaves his work on account of illness does not impart to the employer knowledge of injury or of itself create circumstances which, in common parlance, would indicate knowledge of the occurrence of an injury. No case in this state so holds. It was impossible from the facts

exhibited here to spell out a sufferance of a back injury by this petitioner.

The provision for notice or knowledge of injury is an integral part of the statute. The provision is mandatory and reads: "Unless knowledge be obtained, or notice given, within ninety days after the occurrence of the injury, no compensation shall be allowed." The case of *Kerman v. Hygrade Food Products Corp.*, 130 *N. J. L.* 468 (*Sup. Ct.* 1943), affirmed 131 *N. J. L.* 188 (*E. & A.* 1944), is directly in point here; see also *Moe v. Holbrook Hat Co.*, 4 *N. J. Super* 196 (*App. Div.* 1949).

The requirement of notice is not merely directory but is a condition precedent to the enforcement of any claim. *Hercules Powder Co. v. Nieratko*, 114 *N. J. L.* 254 (*E. & A.* 1935).

The purpose of the notice is to give the employer opportunity to make a timely investigation of the circumstances attendant upon the alleged accident. In most instances an investigation initiated weeks or months after an alleged accident would be fruitless. A further purpose of the provision is to prevent the filing of fictitious claims when lapse of time makes proof of genuineness difficult.

The majority attempts to read into the statute what is not there when it holds that notice is timely when given within 90 days of the time the employee first becomes aware of the effects of an injury. The statute uses the words "after the occurrence of injury." This term is synonymous with the occurrence of the incident which produced the injury. The statute does not speak of notice of the effects of the injury and its clear meaning requires notice within ninety days of the event or incident which produced the injury. *Cf. Hercules Powder Co. v. Nieratko, supra; Kerman v. Hygrade Food Products Corp., supra; General Cable Corp. v. Levins,* 122 *N. J. L.* 383 (*Sup. Ct.* 1939), affirmed 124 *N. J. L.* 223 (*E. & A.* 1940). If the Legislature had meant otherwise, it would have said so in unmistakable terms. Persuasive evidence of this is in the fact that in the enactment providing for notice in occupational disease cases, *R. S.* 34:15–33

(as amended *L.* 1948, *c.* 468, *p.* 1914, *par.* 1), wherein the Legislature provided for a five-month notice after the date when the employee was last subject to exposure, it inserted the provision "* * * or within ninety days after the employee knew or ought to have known the nature of his disability and its relation to his employment * * *."

I would affirm the judgment entered below.

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER, WACHENFELD, BURLING, JACOBS and BRENNAN—6.

*For affirmance*—Justice OLIPHANT—1.