VINCENT SALERNO, PETITIONER-APPELLANT, v. McGRAW-EDISON INDUSTRIES, RESPONDENT-RESPONDENT.

Argued June 7, 1971—Decided July 22, 1971.

*Mrs. Mabel L. Richardson* argued the cause for appellant.

*Mr. Everett Rhinehart* argued the cause for respondent (*Mr. John W. Taylor,* attorney).

The opinion of the Court was delivered by

FRANCIS, J. In this workmen's compensation case, petitioner Vincent Salerno alleged that he suffered bilateral inguinal hernias which arose out of and in the course of his employment with respondent, McGraw-Edison Industries. The claim was made on alternative grounds, *i. e.,* either the hernias constituted an occupational disease under *N. J. S. A.* 34:15–31 or they were compensable as traumatic hernias under *N. J. S. A.* 34:15–12(c)(23). The judge of compensation found that the hernias resulted from a single work-connected lifting episode which occurred a week or two prior to October 31, 1967, but he denied an award because Salerno had not reported the hernias to the employer within 48 hours after their "occurrence" as required by *N. J. S. A.* 34:15–12(c)(23). Having concluded that the hernias were chargeable to the single lifting incident, he held that the occupational disease section of the Act, *N. J. S. A.* 34:15–31, would not support a recovery of benefits. The County Court concurred saying that its independent review of the testimony

led to the "inescapable conclusion that the herniation occurred as a result of the single lifting incident one week prior to October 31, 1967 and not as a result of a long series of trauma." Consequently petitioner's failure to give the required statutory notice to the employer deprived him of a compensation award. The Appellate Division affirmed in an unreported opinion, and we granted certification on petitioner's application. *Salerno v. McGraw-Edison Industries,* 58 *N. J.* 94 (1971).

Salerno, who was 46 years of age at the time of the event which produced this claim, had been in respondent's employ for 28 years. For the last 12 years, part of his duties consisted of lifting from the workbenches of the packers 40 to 50 pound boxes, packed with motors for dictating machines and placing them on a hand truck for removal from the work area. The hand trucks contained shelves on which the boxes were placed, and as the truck neared its full capacity it was necessary for Salerno to lift the 40 to 50 pound box from the workbench to a height of about five and one-half feet in order to fill the top shelf. When the hand truck was loaded, then weighing from 960 to 1200 pounds, he pushed it out of the work area over an uneven and rutted concrete floor. Doing this, he said, called for a "lot of effort."

According to Salerno's testimony, around July 1967 when he did considerable lifting during the course of a day, he experienced an "on and off" burning sensation across his groin. About one or two weeks before October 31, 1967, while he was in the act of picking up a heavy box, he experienced severe pain across his groin. It was so severe that he dropped the carton and went to his knees. Fellow employees helped him to his feet and he had to sit for a while. Then when the severe discomfort left him, he resumed work "thinking nothing of it." Thereafter, he continued his regular daily work without again experiencing the severe pain just described, although he did have the burning sensation at times when lifting. But at the end of the workday apparently he was exhausted; his legs felt "like lead." This

condition persisted and on October 31, after speaking with his foreman, he went to the plant physician, Dr. Curtis, to find out what was causing his problem. The foreman gave him a pass for the dispensary bearing the notation "Pain in groin * * * for about 2 weeks (comes and goes) * * *. Noticed pain when lifting something."

After examination, Dr. Curtis found a bulging bilaterally over the internal inguinal rings "though external rings are intact so far as there is no external impulse." His diagnosis was "Impending bilateral inguinal hernia." According to Salerno the doctor told him that he had hernias; that he should see his own doctor; and that he would have to wear a truss or have surgery if he wished to continue work. The doctor noted no external swelling or lumps in the groin area, nor were any noted or observed by Salerno who was not aware that he had the hernias until Dr. Curtis so informed him. In fact, he first noticed a lump on his left side from three to five months after the lifting incident. At any rate, after a confirmatory diagnosis by his own doctor Salerno obtained a truss and resumed work.

Each party produced an expert medical witness in support of his cause. Dr. Philip Willner, an orthopedic surgeon, examined petitioner on November 29, 1967 and found bilateral complete indirect inguinal hernias. It was his view that the hernias came about as the result of repeated lifting episodes (which he characterized as traumatic episodes) during the course of petitioner's work. And he mentioned particularly the "specific episode prior to October 31 which was severely traumatic" and gave Salerno "severe pain." He expressed the opinion that the severe incident of October was not the sole cause but a contributing factor in the end result; it "caused a further tear in the sac, that is the hernia sac, which caused an increased amount of pain but did not cause descent of the hernia * * *." In explaining the significance of the plant physician's findings, he said Salerno then had early bilateral inguinal hernias. The intestine had come through the internal inguinal ring into the canal but had

not yet descended through the external ring. In such a case the patient would not know he had the hernias; he would not feel any bulge. The only way this early type of hernia can be felt is by an examining physician who puts his finger in the inguinal canal up to the internal ring; he would then feel the bulge. At this time "one could not expect the individual himself to feel or make a diagnosis of a hernia either on one side or the other until later on." On November 29, 1967 Dr. Willner examined Salerno after removing the truss, and he noticed then that petitioner had the bilateral inguinal hernias. On coughing or straining, the intestine descended through the canal into the external inguinal ring. So at this time Salerno had developed complete bilateral inguinal hernias.

Dr. Robert J. Lorello, also an orthopedic surgeon, testified for respondent. His examination of petitioner on July 2, 1968, 10 months after the plant physician's examination, revealed bilateral inguinal hernias, each one about the size of a plum. In answer to a hypothetical question which included a reference to the October 1967 lifting incident he said the sole cause of the hernias was that incident. On cross-examination about the plant physician's findings of October 31, 1967, namely that the doctor had found bulging in the internal ring but that there was no external impulse because the external inguinal rings were intact, Dr. Lorello testified that on October 31, 1967 it was "impossible to say" whether petitioner would know he had a hernia.

There can be no doubt on the record before us that the work-connected lifting espisode of a week or two prior to October 31, 1967 actually occurred and was accompanied by severe pain in Salerno's groin area. The judge of compensation accepted it as the fact and also found that that strain had probably caused the hernias. But he agreed with respondent's contention that compensation benefits should be denied because the statutorily required notice of the hernias was not given to the employer within 48 hours after their occurrence. Having concluded that the single October incident was the

more probable cause of the hernias, he likewise rejected petitioner's alternative claim that the hernias qualified as an occupational disease. On this appeal, we do not find it necessary to consider whether the hernias are compensable as such a disease under *N. J. S. A.* 34:15–31. The evidence being sufficient to support the trial judge's opinion that the probable cause of the hernias was the single lifting episode, we accept it as controlling. However, we cannot agree with the courts below that the notice mandate of *N. J. S. A.* 34:15–12(c)(23) was not satisfied.

The parties concur in the view that if petitioner's bilateral hernias were caused by the single lifting incident, they qualify as traumatic hernias. So *N. J. S. A.* 34:15–12(c)(23) was applicable. It says:

· Where there is a traumatic hernia compensation will be allowed if *notice thereof* is given by the claimant to the employer within 48 hours after the *occurrence of the hernia* * * *. (Emphasis supplied.)

■ Obviously this section of the Act must be given a reasonable interpretation. The Legislature could not have intended to impose an impossible obligation on a workman. A literal construction would mean that if a workman suffered a hernia through an employment strain, he would be barred from the benefits of the Act upon the passage of 48 hours, even though he had neither actual knowledge of the hernia nor awareness of the existence of facts or physical conditions from which a reasonable workman of his education and experience ought to know he had a hernia. Such a stringent rule would create an insurmountable burden for the worker in many cases like the present one, and having in mind the beneficent social purpose of workmen's compensation legislation, we cannot believe the lawmakers intended to impose it.

As has been noted in other cases, the Legislature originally laid down stringent conditions which a workman had to meet in order to prove a compensable hernia. See *Langenohl v. Spearen, Preston & Burrows,* 22 *N. J. Super.* 392

(App. Div. 1952); *Buzza v. General Motors Corp.*, 49 *N. J. Super.* 322 (App. Div. 1958). He had to show by "conclusive proof" that the hernia was immediately caused by such sudden effort or strain that, first, the descent of the hernia immediately followed the cause; second, that there was severe pain in the hernial region; third, that there was such prostration that the employee was compelled to cease work immediately; fourth, that the above facts were of such severity as to be noticed by the claimant and communicated to the employer within 24 hours after the occurrence of the hernia; and fifth, that the physical distress was such as to require the attendance of a licensed physician within 24 hours of the occurrence of the hernia. *L.* 1919, c. 93; *R. S.* 34:15–12x. In ordaining these prerequisites to recovery the Legislature noted its then existing thought that "Hernia is a disease which ordinarily develops gradually, being very rarely the result of an accident." It also spoke of a specific type of traumatic hernia saying "Where there is real traumatic hernia resulting from the application of force directly to the abdominal wall, * * * compensation will be allowed." *L.* 1919, *c.* 93. And it declared that unless the five conditions cited were met all other cases "will be considered as either congenital or of slow development and not compensable."

Administration of the Act in the ensuing years made the harshness of these conditions apparent and efforts began to alleviate them. In 1945, the requirement for "conclusive proof" of the five prerequisites was withdrawn and that of "preponderant proof" substituted. *L.* 1945, *c.* 74, § 5(x), p. 385. Furthermore the Legislature and the courts came to accept the view that when an employee is admitted to an employer's work force, he makes no warranty of physical fitness or freedom from latent disability or disease; the employer takes him as he is, handicapped by any physical impairments, whether or not observable, and subject to any underlying condition or unusual susceptibility or idiosyncracy or quiescent disease, congenital or otherwise, which

when subjected to accidental work-connected injury or strain might result in disability or greater disability than would follow if such underlying condition or weakness were not present. *Belth v. Anthony Ferrante & Son, Inc.,* 47 *N. J.* 38, 45 (1966); *Furferi v. Pennsylvania R. R. Co.,* 117 *N. J. L.* 508, 516 (E. & A. 1936); *Marshall v. C. F. Mueller Co.,* 135 *N. J. L.* 75, 78 (Sup. Ct. 1946); *Molnar v. American Smelting & Refining Co.,* 127 *N. J. L.* 118, 120–21 (Sup. Ct. 1941), *aff'd* 128 *N. J. L.* 11 (E. & A. 1942). As an incident of the developing experience, the Legislature apparently became aware that the harshness of the hernia section was defeating many just claims, and that the section was not fairly consistent with the overall social purpose intended to be served by workmen's compensation legislation. Consequently in 1950, it deleted the whole of subsection x of section 12 and substituted therefor the short paragraph quoted above, which is now *N. J. S. A.* 34:15–12(c) (23).

The change obviously constituted a drastic liberalization of the proof requirements and indicated a legislative purpose to make a hernia compensable if it was produced by a work-connected effort or strain and if notice thereof was given to the employer within 48 hours after its "occurrence." However, it is plain that the Legislature did not intend to remove all of the additional protection given to the employer in meeting hernia claims, as distinguished from the ordinary work-connected accidental injury claims. The additional protection retained was imposition of a more stringent limitation on the time within which the employee must give notice to the employer of the "occurrence" of the hernia than that imposed on an employee who suffers any other kind of accidental injury arising out of and in the course of his work, *i. e.,* an outer limit of 90 days after "occurrence" of the injury. *N. J. S. A.* 34:15–17. Thus in the one case, notice must be given to the employer within 48 hours after "occurrence" of the hernia, and in the other, notice must be given to him (or knowledge

obtained by him) within a maximum of 90 days after the "occurrence" of the injury.

It seems to us that the evolution of the hernia section into its present framework reveals a purpose on the part of the Legislature to treat hernia as any other accidental injury covered by the Workmen's Compensation Act, subject only to the condition that when a hernia results from a single work-connected effort or strain, notice of the hernia's occurrence be given to the employer within the shorter prescribed period of 48 hours. In this respect we agree with the view of the Appellate Division in *Gibson v. Todd Shipyard Corp.*, 48 *N. J. Super.* 535, 538 (App. Div. 1958).[1]

This brings us to a basic question in the present case. Should any difference be recognized in the nature of the burden imposed upon a workman to give notice to the employer within 90 days of the "occurrence" of an accidental injury arising out of and in the course of employment, and the burden to give notice within 48 hours of the "occurrence" of the hernia? In view of the background outlined above and the opinion of this Court in *Panchak v. Simmons Co.*, 15 *N. J.* 13 (1954), the only difference we see is one of time limitation. Legislative use of the word "occurrence" in both sections of the Act sensibly warrants the same interpretation with respect to the notice obligation.

In *Panchak,* the employee suffered a "sharp jab" in his back while lifting a mattress. The pain passed quickly and he thought no more of it. Later in the morning he felt

[1]Further liberalization of the right of recovery for a hernia has come about by judicial construction of the occupational disease section of the Workmen's Compensation Act, *N. J. S. A.* 34:15–31. In the county court opinion in *Gibson v. Todd Shipyard Corp.*, 45 *N. J. Super.* 283, 293 (1957), it was held that a hernia resulting from the cumulative effect, upon the 'susceptibility of the particular claimant,' " of frequently repeated episodes of lifting strain, peculiar to the requirements of the work, "each episode in itself being * * * incapable of effectuating the result ensuing from all the episodes together," was compensable under the cited occupational disease provision.

feverish and faint and dropped over a workbench. The foreman was called and Panchak told him something was wrong and he wanted to go home. According to the foreman, " 'You could see the man was sick; he said he had some sort of a pain,' indicating towards his back." On being sent to first aid he received abrupt treatment there; he was given some pills for a cold and was allowed to go home. He returned to work the next day and continued to work thereafter. Pain in his back worsened over a period of time and visits to several doctors produced no beneficial results. Almost eight months later a neurosurgeon examined him and diagnosed a herniated lumbar disc, for which an operation was performed three weeks thereafter. On the day of the examination and diagnosis, after obtaining a complete history from Panchak, the doctor reported the condition to the employer and its insurance carrier.

Upon the filing of a compensation claim, the employer denied liability relying upon Panchak's failure to give notice within 90 days of the occurrence of the injury. Panchak's position was that the first time he knew or had reason to know he had a compensable injury was when the doctor diagnosed the herniated disc almost eight months after the lifting incident. After an exhaustive study and discussion of the statute, as well as the decisions in other states, Justice Jacobs speaking for six members of the Court said:

> The opinions in the cited cases avoid the bizarre result of disallowing a compensation claim because the workman failed to give notice before he even knew or had reason to know that he had a compensable injury; their inherent justice and good sense are evident. * * * Unlike our statutory provision imposing a two-year limitation for the filing of compensable claims (R. S. 34:15-51), the notice provision with which we are now concerned (R. S. 34:15-17) refers to the occurrence of the injury rather than the accident. We are satisfied that, consistent with the over-all legislative purpose and the persuasive decisions elsewhere, it is fairly to be construed as requiring notice within the prescribed time after the compensable injury is manifested. 15 N. J. at 23-24.

The opinion repeats that Panchak did not know and did not have reason to know he had a compensable injury until

the doctor's examination referred to, and that the notice was then given immediately. That notice was deemed to satisfy the statutory requirement.

The suggestion that the Court's view would encourage questionable claims produced this comment:

The employee must still satisfactorily discharge his affirmative burden of establishing that his injury was work-connected and that he gave notice within the prescribed time after he knew or had reason to know that he had a compensable injury. Measured against the shocking injustice to the workman which would result 'from a stricter approach, the additional responsibility placed upon the employer seems rather inconsequential from society's viewpoint. 15 N. J. at 25.

*Panchak* was followed and applied in a hernia case by the county court in *Minardi v. Pacific Airmotive Corp.*, 43 *N. J. Super.* 460 (Cty. Ct. 1957). There, while lifting crates onto a truck, the workman felt a sharp pain in his right side. He rested for 15 minutes, thinking he had "a gas pain or something," and he then continued working for the rest of the day without reporting the incident to his employer. He worked regularly thereafter until he was laid off 11 days later. He was not aware that he had a hernia until he applied for employment with another company 10 days after the layoff. At that time he was given a preemployment physical examination and was informed by the doctor that he had a hernia. On the same day he notified the former employer of the condition. Compensation benefits were denied by the Workmen's Compensation Division on the ground that notice had not been given to the employer within 48 hours after the occurrence of the hernia as required by *N. J. S. A.* 34:15–12x, (now *N. J. S. A.* 34:15–12(c) (23)).

On appeal, the county court reversed and held the hernia compensable. In a well reasoned opinion predicated primarily upon *Panchak*, the court saw no reason why the two sections of the compensation act, the one requiring notice of the occurrence of "the injury" and the other requiring notice of the occurrence "of the hernia," should not receive the same

interpretation. Consequently it was said to be a reasonable construction of the notice requirement in hernia cases that compensation should be allowed if notice is given to the employer or acquired by him within 48 hours after the hernia became manifest—or in *Panchak* terms, when the employee knew or ought to have known that he had a hernia.

The county court in *Minardi* referred to the statement frequently appearing in the cases that the purpose of the notice section is to protect the employer against claims for hernias not actually caused by employment effort or strain. 43 *N. J. Super.* at 468; *Langenohl v. Spearen, Preston & Burrows, supra,* 22 *N. J. Super.* at 396. It then noted that the deputy director found (as did the judge of compensation in the case before us) that the hernia was caused by the single work incident described by Minardi. Since the hernia was reported to the employer 21 days thereafter but less than 48 hours after Minardi first knew of it, the notice was sufficient.

In our judgment, the view of the hernia notice requirement taken by the county court in *Minardi* was soundly based upon the *Panchak*-doctrine, and we consider that both the doctrine and the philosophy which motivated it are applicable in the present case. We realize that credibility of the workman who claims a work-connected hernia is an important issue, and that his obligation to furnish notice to the employer within 48 hours after occurrence of the hernia, indicates a legislative intention as defined in *Panchak* that the good faith and veracity of the claim should be closely scrutinized. But we are satisfied that the lawmakers' purpose was, not to impose an unrealistic and impossible burden on the employee. 3 *Larson, Workmen's Compensation Law,* § 78.42(a), p. 72 (1970). It is inconsistent with the policy and high motives which prompted the remedial workmen's compensation legislation to conclude that a hernia produced by a work-connected strain is excluded from coverage if the hernia actually existed within 48 hours after the strain incident and could be discovered by a skilled

examining physician, just because the workman neither knows nor has any reasonable basis for knowing that he has the hernia.

The tribunals below predicated the denial of compensation upon *Buzza v. General Motors Corp., supra,* 49 *N. J. Super.* 322, and *Della Fave v. David Kahn, Inc.,* 108 *N. J. Super.* 203 (App. Div. 1970). Both cases are factually distinguishable from this case because in each of them the circumstances were found to be such that the petitioner knew or should have known that a hernia had occurred at the time of the lifting incident.

In *Buzza* (which followed in *Della Fave*) the Appellate Division specifically rejected as inapplicable, in hernia cases, the test suggested by the decision in *Panchak* and adopted in *Minardi.* It held that the notice provision must be construed literally, and that if a hernia occurs following a work-connected strain, the notice thereof must be given within the 48-hour period, regardless of whether the employee knew or ought to have known that he had a compensable hernia. 49 *N. J. Super.* at 332. And it specifically ruled that a "know or ought to know" criterion cannot be substituted. In our opinion, such a literal interpretation of *N. J. S. A.* 34:15-12(c)(23) is not only inconsistent with the overall policy of the Workmen's Compensation Act but also with the progressive liberalization of the hernia section. To the extent that *Buzza* and *Della Fave* conflict with our application of the *Panchak* rule to hernia cases, they are overruled.

 On the facts in the present case the hernia claim is entirely credible. The strain incident was observed by other employees; there was no noticeable swelling, protrusion or lump in Salerno's groin after it occurred, nor was any such condition present when he reported the lifting incident to the foreman on October 31, 1967, a week or two after it occurred. He had no knowledge or reason to know of the existence of bilateral hernias until respondent's plant physician, who examined him pursuant to the clinic pass given

to him by the foreman, discovered them by examination and so informed Salerno. There was no lump or swelling in his groin at that time; in fact months went by before one or both of them appeared. Thus knowledge of the occurrence of the hernias came to Salerno and to the respondent through the plant physician on the same day. The plant physician's knowledge, in conjunction with Salerno's report to the foreman satisfied the statutory requirement for notice of the hernia to the employer. See *Panchak v. Simmons Co., supra,* 15 *N. J.* at 19; 3 *Larson, supra,* § 78.31(b), p. 33.

For the reasons stated, the judgment of the Appellate Division is reversed, and the matter is remanded to the Workman's Compensation Division for the allowance of compensation benefits.

*For reversal and remandment*—Chief Justice WEINTRAUB and JUSTICE JACOBS, FRANCIS, PROCTOR and HALL—5.

*For affirmance*—None.