ARTHUR CSONT, PETITIONER-RESPONDENT, v. STANDARD BRANDS, RESPONDENT-PROSECUTOR.

Submitted May 7, 1946—Decided August 19, 1946.

Before Justices BODINE, PERSKIE and WACHENFELD.

For the prosecutor, *Albert E. Schober* (*John J. Francis*, of counsel).

For the respondent, *Anna B. Hogan* (*William W. Shaw*, of counsel).

The opinion of the court was delivered by

PERSKIE, J.  This is a workmen's compensation case.  The meritorious question for consideration is whether the employee suffered a compensable hernia.  *R. S.* 34:15–12x.

Arthur Csont, petitioner below and respondent here, hereafter referred to as respondent, caused a claim petition for compensation to be filed against his employer, Standard Brands, respondent below and prosecutor here, hereafter referred to as prosecutor.  Respondent's answers to the formal questions of his petition indicate that his claim for compensation was based upon the premise that he suffered an accident, on August 3d, 1944, namely, a "right traumatic inguinal hernia and bilateral strain of inguinal muscles," and that this accident arose out of and in the course of his employment.

Prosecutor, substantively stated, denied that respondent suffered a compensable hernia.  The proofs are free from dispute; their legal effect is not.

From the record submitted, we ascertain that respondent, a single man, thirty-six years of age, was employed by prosecutor as a tea blender. In the course of the duties incident to his employment, respondent was obliged to, and did, with the help of an adult fellow employee, lift cases of tea, each of which weighed between 90 to 160 pounds, from the floor on to a vehicle. The lift from the floor to the vehicle was about three feet.

In the afternoon of August 3d, 1944, respondent, with the aid of a sixteen-year-old boy, who had been assigned instead of an adult to help the respondent, was engaged in lifting one of the cases. Apparently unable to hold up his end of the case, the boy dropped it. Respondent held up his end of the case. As a result, he "felt sharp pain and strain followed by continuous pain in the abdomen." More specifically, as described by respondent, he "felt a sharp pain in his right side," in his "right groin," it "felt as if the pain shot all over [his] whole abdomen." There is no proof that the case either touched or struck respondent's abdomen.

Although respondent could not thereafter work the way he usually worked (he took his time while working), nonetheless, he continued to work from 1:30 p. m. (time of the accident) to the end of the afternoon. He worked the following day. On Monday following the date of the alleged accident, respondent first reported the accident to his foreman who in turn sent respondent to prosecutor's doctor. The doctor examined respondent and sent him back to the foreman with instructions that respondent be placed on light work. This work, while lighter than the work respondent had previously performed, required some light lifting and some bending, all of which respondent did for about three days although the pain in the lower right part of his abdomen persisted. He again reported to the doctor and was again told to go back to his work. Respondent did not do so. He was again examined by the same doctor and was advised to go home and rest up over the week-end. Finally, on August 15th, 1944, the doctor, after again examining respondent, advised him that a hernia had finally developed and that he should stop work. Admittedly, respondent had no prior hernia.

Prosecutor provided respondent with a "surgical truss" and paid him for the twelve days work which he lost. Respondent now works for another employer where no lifting is required.

Dr. Joseph A. Visconti, a witness for respondent, testified that he had examined respondent on February 26th, 1945; that he was wearing a truss on his right side; that there was a visible as well as a palpable mass in the right inguinal area about the size of a hen's egg; that the right external ring was dilated; that there were tenderness, impulse and descent of the hernia which was reducible; and that the left groin was negative, *i. e.*, free from hernia. The doctor's diagnosis was that the hernia suffered was the "residual effect of strain on the right inguinal area, associated right indirect, incomplete inguinal hernia." He appraised the disability at approximately three per cent. of total for the residual effects of strain. And in the further opinion of this doctor, the "hernia and the strain, the residual effects of the strain [were] causally related to the incident in question." In other words, this doctor was of the mind that respondent "had a strain of the right inguinal area."

Dr. Anthony J. Watman, a witness for the prosecutor, testified that he examined respondent on March 14th, 1945. This doctor's diagnosis also was that respondent suffered a "right indirect inguinal hernia which should be corrected by operative procedure." And this doctor was of the opinion that respondent did not suffer, as set down in the claim petition, from "any bilateral strain of inguinal muscles" but did suffer "merely from a right indirect inguinal hernia," and that the left side was negative.

Dr. Charles Quaglieri, a witness for the prosecutor, is the doctor who examined the respondent on the Monday following the accident and thereafter until August 15th, 1944, when the hernia finally developed. The doctor testified that when he examined the respondent he had a slight relaxation of the inguinal ring, external right inguinal ring, with impulse on coughing. And that this is commonly known as a "strain in the inguinal region." And when asked whether respondent may have a strain of any muscles or ligaments in the right inguinal region which were separate and apart from the

hernia, he answered that respondent has a "strain around the inguinal ring, surrounding the muscles which are attached to the inguinal ring, and those are the lower fibers of the rectus muscle."

From what has been written it is quite clear that the case was tried upon the theory of "sudden effort or severe strain (*R. S.* 34:15–12x), although respondent's answer to question No. 23, of the claim petition, was concededly comprehensive enough to put in issue a "real traumatic hernia," resulting from the application of force directly to the abdominal wall, either tearing or puncturing the wall. *R. S.* 34:15–12x.

In this posture of the proofs, the deputy commissioner in the Bureau answered the posed question requiring decision in the negative. That answer was based upon his finding that the proofs offered for the respondent failed to preponderate the five statutory conditions under which an inguinal hernia, caused by sudden effort or severe strain, is compensable. *R. S.* 34:15–12x. Respondent's claim petition was dismissed accordingly.

On appeal, the posed question was answered in the Hudson County Court of Common Pleas in the affirmative. That answer was based upon the finding that respondent's "injury was not caused by sudden or ordinary strain or effort, but was the direct result of unusual and extraordinary force" due to the stated manner in which the accident happened. Respondent was held to have suffered a "real traumatic hernia" within the meaning of *R. S.* 34:15–12x and therefore it was not necessary for the respondent to offer "preponderate proof" of the five stated provisions as is required in case of a hernia resulting from "sudden effort or severe strain." *R. S.* 34:15–12x. *Cf. Hendricks* v. *Diehm Bros.,* 122 *N. J. L.* 105; 4 *Atl. Rep. (2d)* 30.

We are met, at the outset of our consideration and determination of this cause, with the contention that the Hudson County Court of Common Pleas erred in reversing the Bureau on a theory (a real traumatic hernia) which was never presented, nor tried in the Bureau, nor presented nor argued in the Pleas. As already observed, the theory of a "real traumatic hernia" was sufficiently made an issue in the respond-

ent's claim petition. Apparently, respondent did not choose to offer proofs in support of that theory. He chose to rely upon the theory of a strain of the muscles or ligaments in the right inguinal area and that this strain has, so to speak, a separate and continuing identity from the actual hernia and therefore he suffered a compensable strain as the result of an accident. In our view of the case, the point, as we shall show, lacks merit. Suffice it presently to observe that the Pleas could have exercised its power and could have remanded the case to the Bureau. It did not do so. Instead it took hold of the appeal, properly treated it as a proceeding *"de novo"* thus providing a "new mind" for the consideration of the cause. It did not affirm the Bureau. It pointed out, in effect, what it believed to be the error committed in the Bureau and reached the aforestated result. However wrong that result may be, the process employed in reaching that result was clearly within the proper sphere of the court's power. We see no occasion on our part to remand the cause. Ours is the duty independently to review the facts and the law applicable thereto. *Cf. Calicchio* v. *Jersey City Stock Yards Co.,* 125 *N. J. L.* 112, 116, 117; 14 *Atl. Rep. (2d)* 465, and cases there collated. Pursuant to that duty, plus the request of the holder of the writ, that the "entire matter be adjudicated," we turn to the merits of the case.

1. The result of our independent appraisal of the facts concerning the alleged accident and the law applicable thereto (*Beerman* v. *Public Service Co-ordinated Transport,* 123 *N. J. L.* 479; 9 *Atl. Rep. (2d)* 690; *Owens* v. *Bennett Air Service,* 133 *N. J. L.* 540; 45 *Atl. Rep. (2d)* 320; *Dalton* v. *Consolidated Laundries Corp.,* 134 *N. J. L.* 27; 45 *Atl. Rep. (2d)* 796), leads us to the conclusion that the proofs offered for the respondent utterly fail to preponderate the five statutory provisions required in case of a hernia resulting from sudden effort or severe strain. *R. S.* 34:15–12x. They fail to preponderate the prerequisites of (1) immediate descent of the hernia, (3) that there was such prostration that compelled respondent to cease work immediately, (4) that the severity of the situation was noticed by the respondent and was communicated to the prosecutor within twenty-four

hours after the occurrence of the alleged accident, and (5) that there was such physical distress that the attendance of a licensed physician was required within twenty-four hours after the occurrence of the accident. The Bureau correctly answered the posed question in the negative on this branch of the case. *R. S.* 34:15–12x. *Cf. Prino* v. *Austin*, 121 *N. J. L.* 518; 3 *Atl. Rep.* (*2d*) 621; *Atlantic City* v. *Santangelo*, 130 *N. J. L.* 14; 31 *Atl. Rep.* (*2d*) 227; *Di Mieri* v. *Metafield, Inc.*, 126 *N. J. L.* 484; 20 *Atl. Rep.* (*2d*) 39; *affirmed*, 127 *N. J. L.* 597; 23 *Atl. Rep.* (*2d*) 564.

2. Nor did the respondent properly establish that he suffered a "traumatic hernia resulting from the application of force *directly* to the abdominal wall, either puncturing or tearing the wall." *R. S.* 34:15–12x. (Italics supplied.) There is no proof, as heretofore observed, of the application of any force to the respondent's abdominal wall. Obviously, what happened was that when respondent bore the full weight of the case he suffered an intra-abdominal strain which started what was characterized as an "incipient hernia" in *Di Mieri* v. *Metafield, Inc., supra* (at *p.* 491), and what was characterized as a "potential hernia" in *Atlantic City* v. *Santangelo, supra* (at *p.* 15). This hernia, however characterized, did not develop until twelve days after the alleged accident. The hernia was the end result of the intra-abdominal pressure created by the sudden effort or severe strain and was not created by a real traumatic injury within the meaning of the statute. To separate the sudden effort or severe strain as an independent factor from the hernia, as urged for the respondent, would in the circumstances exhibited, and in all other circumstances where the hernia is the result of internal pressure because of sudden effort or severe strain, render such a hernia traumatic and would eliminate, as here, an indirect inguinal hernia from the statute. Such a result would destroy the distinction made by the legislature as to the two instances under which an inguinal hernia is made compensable. Such a result is beyond the judicial power.

This is not the case of an aggravation of an old hernia as in the case of *Furferi* v. *Pennsylvania Railroad Co.*, 117 *N. J. L.* 508; 189 *Atl. Rep.* 126; *Cf. Mandel* v. *Federal*

*Shipbuilding and Dry Dock Co.,* 133 *N. J. L.* 311; 44 *Atl. Rep.* (2*d*) 343. Nor are the facts in the case at bar at all comparable to the facts in the case of *Hendricks* v. *Diehm Bros., supra.* In that case the employee was standing on a five-foot stepladder nailing a porch column at the top when the ladder tilted over and he and the ladder fell to the ground. The employee was immediately prostrated with pain and discovered the descent of the hernia. Under these facts the court held that it was "an entirely reasonable inference" that the hernia resulted from a "blow on the abdomen" which the employee sustained in the fall and hence it was not necessary for him to prove the five statutory provisions. There is no such comparable proof in the case at bar. *Cf. Prino* v. *Austin, supra; Atlantic City* v. *Santangelo, supra.*

The judgment of the Court of Common Pleas of Hudson County is reversed and the judgment in the Bureau is affirmed, with costs.