49 N.J. Super. 322 (1958)
139 A.2d 790
FRANK BUZZA, PETITIONER-APPELLANT,
v.
GENERAL MOTORS CORPORATION, LINDEN PLANT, RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 12, 1957.
Decided March 21, 1958.
*324 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Louis C. Jacobson argued the cause for petitioner-appellant (Mr. Jay Spielman and Mr. M. Marvin Soperstein, attorneys).
Mr. Carl S. Kuebler argued the cause for respondent-respondent (Messrs. Carpenter, Bennett, Beggans & Morrissey, attorneys).
The opinion of the court was delivered by CONFORD, J.A.D.
Both the Division of Workmen's Compensation and the Union County Court on appeal determined this workmen's compensation case adversely to the petitioning employee. The claim was for a hernia alleged in the petition to have occurred November 8, 1955 at the respondent's plant at Linden.
Petitioner was hired by respondent on November 8, 1955. The previous day he had received and passed a pre-employment physical examination. His job was to lift heavy fenders from conveyors and put them on other conveyors. He testified that on his very first day of work, while picking up fenders, he "felt sharp pains in [his] groin." He did not *325 stop work then but told the foreman that the job was too heavy for him and that he "didn't feel good."
Petitioner testified on cross-examination that on the night of November 8 he noticed a lump in his left groin and was doubled up with severe pain; that he then knew "there was something wrong there then"; and that the lump would reappear whenever he worked. On November 10 he went to the company nurse but did not tell her about the pains in his groin, merely that he had a headache. The pass signed by the foreman stated that petitioner had a headache. The nurse gave him an aspirin. On redirect examination he intimated that embarrassment prevented him from disclosing the nature of his symptoms to the nurse. Despite his complaint concerning heavy work, he was told by the foreman that there was no other job for him to do; so he continued working the remainder of the week, that is, until November 11, when he quit.
Petitioner endeavored to find employment at Dugan Brothers on November 14. Dugan Brothers' doctor told him to see his own doctor. The next day he went to his own doctor, Dr. Giannotto, who, after examination, advised him that he had a hernia. The following day, November 16, petitioner went to see respondent's plant doctor, Dr. Young, and told him that he "got hurt on the job," but the doctor, after an examination, told him that he had no hernia. He returned to the Dugans' physician, who re-examined him and reaffirmed the conclusion of hernia. Petitioner gave testimony establishing that he still has a hernia and wears a truss while working. On redirect examination he expressly testified that he did not know he had a hernia until he saw his own doctor on November 15.
It is conceded by respondent for the purposes of this appeal that petitioner sustained a hernia on November 8 which was causally related to his employment by respondent and that notice was given to the respondent on petitioner's visit to the plant doctor on November 16.
At the close of the petitioner's testimony and before the introduction of any medical proofs the Deputy Director *326 dismissed the petition on motion on the sole ground that petitioner failed to give notice to his employer within the period prescribed by N.J.S.A. 34:15-12(c) (23) (formerly section 34:15-12(x)); i.e., "within 48 hours after the occurrence of the hernia." The basis for the conclusion was stated as follows:
"Whether he knew that he had an hernia or not, he was put on notice that something was wrong when he had that pain in the groin and specially when the lump appeared on the night of the eighth of November. Whether he knew or did not know there was an hernia is immaterial. The Statute uses the word `occurrence' rather than `knowledge.' The petition will, therefore, have to be dismissed."
The County Court concurred in the dismissal of the petition on two grounds: (a) that petitioner's testimony did not credibly establish an accidental hernia connected with the employment, and (b) that, assuming petitioner sustained a traumatic hernia,
"he knew or had reason to know of it on the night of November 8, 1955, but on any reasonable interpretation of the evidence and any reasonable view of human behavior, consistent with his duty to give notice, he failed to comply with the statute no matter how liberally we may construe its provisions."

I.
On the present appeal petitioner argues that the statute should be construed not to cause the running of the 48-hour notice period until the employee has knowledge of the fact that he has an employment-caused hernia. This he contends did not occur in his case until his own doctor told him he had a hernia, which was on November 15, 1955, and he reported the matter to the respondent the next day. He relies on Minardi v. Pacific Airmotive Corp., 43 N.J. Super. 460 (Cty. Ct., 1957).
The Minardi case does not help petitioner, even if regarded as correctly decided. There the workman felt a sharp pain in his side while lifting crates May 7, 1955. *327 He thought it was "a gas pain or something" and continued working after a short rest. He continued to work until May 19, 1954, when he was laid off. He discovered he had a hernia on May 28, 1954 and at that time notified the respondent. There does not appear to have been any direct proof as to when the hernia, or breach of the abdominal wall, actually occurred. The Union County Court, applying the analogy of the rule in Panchak v. Simmons Co., 15 N.J. 13 (1954), held that the statute is to be construed to require that notice of a traumatic hernia should be given within 48 hours "after the hernia became manifest; that is, within 48 hours of the time that  by the exercise of reasonable care and diligence  it is discoverable and apparent that a compensable injury has been sustained." Notice was there held given in time, the mere pains on May 7, 1955 not constituting such a manifestation of the condition. Even if the reasoning of the Minardi case is accepted as sound statutory construction, it bars the present petitioner's claim. His hernia was perfectly manifest to him during the night of November 8, 1955, at the latest. He was doubled up with pain in the groin and felt a lump in that area, which he knew indicated something was wrong there. These are classical symptoms of inguinal hernia. The reappearance of the lump whenever he worked was additionally corroboratory of the condition.
In the Panchak case, supra, involving construction of the general notice provision of the act, R.S. 34:15-17, the court held that the notice period does not begin to run until the employee knows or has reason to know that he has a compensable injury.
The mere circumstance that petitioner was not apprised of the technical fact that he had a hernia, as such, cannot prevent the legal imputation to him of such knowledge concerning his condition as is reasonably attributable, imputing to him such general intelligence and capacity for knowledge as a person of his general background may be expected to have. Cf. Bucuk v. Edward A. Zusi Brass Foundry Co., 49 N.J. Super. 187 (App. Div. 1958).
*328 In our view, accordingly, conceding for the purpose of the present discussion the applicability of the Panchak rule to a hernia case, this petitioner, beyond the possibility of any reasonable factual conclusion to the contrary from the evidence adduced on his own case, knew or had reason to know that he had a traumatic hernia, if indeed he sustained such a hernia on November 8, 1955, as claimed, well in advance of 48 hours prior to his apprising the respondent of the claim. In other words, we conclude that the finding by the County Court on this issue was not only a proper one but the only finding justified from the testimony. On the basis of this determination it makes no difference that the dismissal took place at the conclusion of petitioner's case, rather than after hearing both sides. See Cierpial v. Ford Motor Co., 16 N.J. 561 (1954).
We note, in passing, that the Supreme Court has not hitherto expressly considered whether R.R. 4:42-2(b) should not be given the full effect indicated by its language, to the end that in a case tried without a jury, on a motion for dismissal by the defendant at the end of the plaintiff's case, the court as trier of the facts may, if it chooses to do so, determine the facts on the merits at that time and enter judgment in favor of the defendant accordingly, rather than follow the rule generally applied in jury cases of giving the plaintiff the benefit of all facts and inferences in his favor on such a motion. See Cauco v. Galante, 6 N.J. 128 (1951); Kolberg v. Kolberg, 16 N.J. Super. 413, 414-415 (App. Div. 1951); Ptak v. General Electric Co., 16 N.J. Super. 573, 575 (App. Div. 1951); 5 Moore, Federal Practice (2d ed. 1951), par. 41.13 [4]; Huber v. American President Lines, 240 F.2d 778 (2 Cir. 1957); cf. Kahn v. Massler, 241 F.2d 47 (3 Cir. 1957). The practice rule appears to make sense in that it eliminates waste motion and encourages prompt conclusion of nonjury cases where the evidence so warrants. The Cierpial case, supra, apparently assumes that whatever is the appropriate practice in the law courts in this regard is equally applicable before the Division of Workmen's Compensation.
*329 Moreover, continuing the assumption that the Panchak case controls as to the rule of notice, but assuming, contrary to our factual determination hereinabove, that the factual proofs on the issue are not so conclusive as to require a determination thereon in favor of the respondent as a matter of law, we would be inclined, in the present procedural posture of this case, to exercise our own fact-finding power in order to save circuity of action and decide the issue for the respondent, the proofs pointing overwhelmingly in that direction.

II.
Returning, however, to the merits of the matter of statutory construction, we have concluded that we should rest our determination that the judgment should be affirmed on the ground that the proper construction of the notice provision, N.J.S.A. 34:15-12(c) (23), is the one literally called for by the language employed, i.e., that notice must be given "within 48 hours after the occurrence of the hernia" (emphasis supplied), rather than, by analogy to the Panchak rule, after the employee knows or should know that he has a compensable claim for hernia. We arrive at this conclusion on the basis of the special treatment which the Legislature has given, and still gives, to claims of workmen's compensation for traumatic hernia.
The history of the statutory treatment of hernia in our workmen's compensation statute is summarized in Langenohl v. Spearen, Preston & Burrows, 22 N.J. Super. 392 (App. Div. 1952). We recite so much of it as is necessary for an understanding of the basis for our present conclusion.
Under the original Workmen's Compensation Act there was no special provision for hernias, compensation being recoverable if a hernia resulted from an accident arising out of and in the course of the employment. Apparently there followed a course of frequent recovery in what the Legislature became satisfied were not true cases of accidental, or traumatic hernia, but rather the typical inguinal hernia *330 induced by a long period of relatively minor stresses and strains resulting finally in the protrusion of the intestine or other organ with its containing sac through the abdominal cavity in the inguinal region. See Furferi v. Pennsylvania R.R. Co., 117 N.J.L. 508, 514 (E. & A. 1937). In order to prevent such supposedly unwarranted recoveries the Legislature, by L. 1919, c. 93, amended section 11 of the act (R.S. 34:15-12), the provision which contained the basic legislation fixing amounts payable for temporary, permanent and specific disability, to add a subparagraph "x" which recited, in part:
"x. Hernia is a disease which ordinarily develops gradually, being very rarely the result of an accident. Where there is a real traumatic hernia resulting from the application of force directly to the abdominal wall, either puncturing or tearing the wall, compensation will be allowed. All other cases will be considered as either congenital or of slow development and not compensable, being a disease rather than an accidental injury; unless conclusive proof is offered that the hernia was immediately caused by such sudden effort or severe strain that, first, the descent of the hernia immediately followed the cause; second, that there was severe pain in the hernial region; third, that there was such prostration that the employee was compelled to cease work immediately; fourth, that the above facts were of such severity that the same was noticed by the claimant and communicated to the employer within twenty-four hours after the occurrence of the hernia (days when the business is not in operation, such as Sundays, Saturdays or holidays shall be excluded from this twenty-four-hour period); fifth, that there was such physical distress that the attendance of a licensed physician was required within twenty-four hours after the occurrence of the hernia. * * *"
By L. 1945, c. 74, the requirement of "conclusive proof" of the five points specified as prerequisites was superseded by that of "preponderant proof."
The statute as amended was recognized to create two kinds of compensable hernias, one the "real traumatic hernia," involving direct application of force to the abdominal wall, the other the "sudden effort or severe strain" type, requiring proof of the so-called "five points." Csont v. Standard Brands, 134 N.J.L. 395 (Sup. Ct. 1946). Of the latter rigid prerequisites it was said, in Borodaeff v. *331 Province Line Dairy, Inc., 109 N.J.L. 25, 27 (Sup. Ct. 1932): "The real purpose of the precautions laid down by the legislature in the section here involved is to protect the employer from claims for hernia not actually caused by * * * accident." In other words, the Legislature decided that, in this special category of industrial accidents, because of abuses which had arisen through easy simulation of non-industrial hernias to bona fide cases of employment-connected traumatic hernia, a series of absolute evidentiary criteria, then deemed scientifically valid, should be fixed as indispensable prerequisites of a recoverable claim. The 1919 amendment quoted above was the result. It is particularly to be noted that the corrective legislation specified the 24-hour notice period in terms of its evidential force in helping to establish the "severity" of the other prerequisite criteria of the trauma, such as severe pain in the hernial region, prostration, immediate cessation of work, etc. It thus appears that the primary function of the short notice period was to assist in furnishing probative assurance of the genuineness of the claim.
Ultimately the pendulum swung the other way. Spokesmen for the point of view of employees complained that the rigid application of the statute was frustrating recovery in meritorious cases, and this appeared to be a valid criticism. See, e.g., Giresi v. Okonite Co., 24 N.J. Misc. 388 (Ct. Com. Pl. 1946). Assembly Bill No. 84 was introduced in the 1950 Legislature for the purpose of repealing subparagraph x of N.J.S.A. 34:15-12. The statement appended to the bill by its sponsor recites that the statutory requirements "are a positive fraud upon the workers  an outrageous capitulation to demands of insurance companies based upon a totally false and unfair hypothesis that hernia is very rarely, if ever, caused or aggravated by an accident." This bill was later amended to include the short proviso set forth above as subsection c. 23 of N.J.S.A. 34:15-12. Another bill of the same legislative session, Assembly Bill No. 99, originally introduced only to increase rates of compensation payable, was later amended to include the same proviso as *332 had been added to Assembly Bill No. 84. Both bills passed in both of the legislative houses. The Governor signed No. 99 and vetoed No. 84.
The foregoing legislative history fairly compels the conclusion that the Legislature, while satisfied that some meritorious recoveries for traumatic hernia due to sudden or severe strain or effort at work were being frustrated under the former subparagraph "x," and that the "five points," as such, should be eliminated, had no intention to permit the entire category of accidental hernias to fall into the general provisions of the statute for work-connected accidents, as originally sought by the sponsor of Assembly Bill No. 84. If it had, it would simply have passed that bill as originally drawn. The decision to retain a special provision for "traumatic hernia" in N.J.S.A. 34:15-12 and to condition the allowability of compensation therefor upon the giving of notice by the claimant to the employer "within 48 hours after the occurrence of the hernia," rather than leave notice of claim in such cases to the much longer notice provisions of R.S. 34:15-17, is clearly significant of a residual legislative conception that hernia compensation claims remain a suspect category, and that the likelihood of false claims still required some precautionary device, determined by the 1950 amendatory legislation, as finally adopted, to be satisfied by the short notice requirement quoted.
The legislative rationale is thus seen to consist in the view that any true traumatic hernia must inevitably be accompanied by such dramatically uncomfortable circumstances as to lead to the apprisal of the employer thereof by the employee within 48 hours after the occurrence of the hernia, i.e., after the protrusion of the internal organ through the abdominal wall. The requirement of quick notice continues, as previously, to serve as a probative assurance of the validity of the claim. Not to construe the provision literally, therefore, but to substitute by construction the criterion of when the employee knew or ought to have known that he had a compensable hernia claim, would be to strip the provision of its utility as a probative *333 device, and to open the door to the kind of contrived claims which it was the very purpose of the Legislature to prevent, if possible.
It does not matter that we, as individuals, might not agree with the apparent legislative notion that 48-hour notice serves effectively and without injustice to help reduce false or unwarranted claims in this particular category of disability. The Legislature had the right to fix the evidential and procedural prerequisites for a compensable hernia claim. The ordinarily applicable rule of liberality of construction of the Workmen's Compensation Act will not excuse judicial disregard of legislative intention made clearly manifest by a study of the background, objectives and contents of the statute as it stands, in order to foster what the court might deem more liberal treatment of an employee's claim. See Westinghouse Electric Corp. v. Board of Review, 25 N.J. 221, 234 (1957). Our obligation always is to enforce the legislative intent, once we are clear as to what that really is. In view of the above conclusion, we must overrule the construction of the hernia provision set forth by the County Court in Minardi v. Pacific Airmotive Corp., supra.
There can be no doubt that (as the claim petition itself avers) the "occurrence of the hernia" in the present case took place no later than the time when petitioner felt the lump and pain in his groin the night of November 8, 1955. He did not give notice to respondent within 48 hours (excluding Saturdays, Sundays and holidays) thereafter, and his claim is therefore barred.
Petitioner advances the alternative contention that notice to the employer by the petitioner was excused because the employer knew or ought to have known without such notice that he had sustained the hernia. This argument does not appear to have been advanced in either of the lower tribunals, and it is therefore not entitled to consideration here as of right. Nor was the fact that the new issue was not raised below noted in the Statement of Questions Involved in the brief, as required by R.R. 1:7-1(c). However, *334 the point has no merit. It is based upon another determination made in the Panchak case, supra, in reference to the general notice section of the act, R.S. 34:15-17, to the effect that the provision therein excusing the giving of notice of injury by the employee where the employer has "actual knowledge of the occurrence of the injury" is applicable if the employer's supervisory employees "have been duly made aware of circumstances which, in common parlance, would indicate knowledge of the occurrence of the injury" (15 N.J., at page 17). We need not decide whether that holding is applicable to the hernia section. It may be noted that the hernia provision does not contain the express reference to knowledge by the employer which is set forth in R.S. 34:15-17. But assuming the rule stated in Panchak is properly applicable here, the proof does not meet the test of employer-knowledge formulated in that opinion.
During the 48 hours following the occurrence of the hernia defendant's supervisory employees were given no information which would have made them even suspicious that petitioner might have sustained an injury of any kind at work, much less a hernia. The facts detailed in the fore-part of this opinion speak for themselves. They do not reasonably sustain the hypothesis that respondent's staff employees knew or ought to have known prior to November 16, 1955 that petitioner had sustained a hernia at work.
Judgment affirmed.